UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRIS J. BARKER,

           Plaintiff,

--against--

PECONIC LANDING AT SOUTHOLD,
INC., GREG GARRETT, DOROTHY
LOCKBRIDGE, LEE COLE and JANE
WILSEY (sued in their individual capacity
pursuant to New York Executive Law §290),

           Defendants.
------------------------------------------------------------X

                                MEMORANDUM AND ORDER

                                11-CV-5086
                                (LDW)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

JUL 3 0 2012

LONG ISLAND OFFICE

APPEARANCES:

        SCOTT MICHAEL MISHKIN, P.C.
        BY: KATHLEEN A. TIRELLI, ESQ.
        One Suffolk Square, Suite 240
        Islandia, New York 11747
        Attorneys for Plaintiff

        JACKSON LEWIS LLP
        BY: CHRISTOPHER M. VALENTINO, ESQ.
           JOHN J. PORTA, ESQ.
        58 South Service Road, Suite 410
        Melville, New York 11747
        Attorneys for Defendants

WEXLER, District Judge:[1]

    This is an action commenced by Plaintiff Chris J. Barker ("Plaintiff") alleging

employment discrimination and retaliation pursuant to Federal and New York State Law. Named

as Defendants are Plaintiff's employer Peconic Landing at Southold, Inc. ("Peconic") as well as

---

[1]      The Court acknowledges the assistance of Amanda Nagrotsky, a student intern from
the George Washington University Law School in the research and preparation of this
opinion.

three individual employees of Peconic (the "Individual Defendants"). The Individual Defendants are sued pursuant to State law only. Presently before the court is the motion of Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint.

## BACKGROUND

I.     Facts

The facts set forth below are drawn from the complaint and accepted as true in the context of this motion.

A.     The Parties

Plaintiff is an individual who alleges that he is disabled within the meaning of federal and state law. Specifically, Plaintiff states that he suffers from a 70% hearing loss, tinnitus and an injury to his left rotator cuff. Plaintiff was first employed by Peconic in 2008 in the position of Supervising Registered Nurse working the night shift. The individually named Defendants are Greg Garrett ("Garrett"), Dorothy Lockbridge ("Lockbridge"), Lee Cole ("Cole") and Jane Wilsey ("Wilsey"). At all times relevant to the complaint, Garrett was Peconic's Health Center Administrator, Lockbridge was its Director of Nursing, Cole was the Nursing Manager, and Wilsey was the facility's Human Resources Director.

B.     Incidents Described in the Complaint

Plaintiff's complaint makes reference to several distinct incidents that occurred during the course of his employment at Peconic. The first set of incidents set forth in the complaint refer to specific acts involving Plaintiff's disability and alleged direct acts of discrimination stemming therefrom. The second set of facts in the complaint refer to alleged acts of misconduct observed by Plaintiff, his communication of those acts to his superiors, and the retaliation that is alleged to

2

have followed.

As to incidents alleging discrimination based upon Plaintiff's disability, the complaint refers first to a September 2010 altercation that took place outside of the Peconic facility between a Peconic employee and her boyfriend. Plaintiff states that because of his hearing loss, he was unaware of this violent incident and therefore took no action with respect thereto. He states that as a result of his inaction, he was accused by Garrett of violating Peconic's "Violence in the Workplace" policy. The violation led Garrett to place a warning in Plaintiff's work file, an act that Plaintiff describes as an act of intentional discrimination based upon Plaintiff's hearing disability.

Plaintiff also accuses Defendant Lockbridge of engaging in discrimination by keeping a separate personnel file on him. This file, alleged to have been created on or about the time of the September 2010 incident, is alleged to be an act of discrimination on the ground that no such files were maintained with respect to other non-disabled employees. Plaintiff alleges that while he complained to Wilsey about the Lockbridge file, she failed to take any action on Plaintiff's complaint. The non-action by Wilsey is also alleged to constitute an act of intentional discrimination.

As to other acts of intentional discrimination, the complaint also refers to acts that took place during a January 2011 blizzard when Plaintiff was asked to cover a day shift because of a shortage in staffing. On that day, Lockbridge is alleged to have intentionally discriminated against Plaintiff by reprimanding him for speaking loudly, even though she knew that Plaintiff spoke loudly only because of his hearing impairment.

Next, Plaintiff complains about an incident that occurred in March of 2011. That incident

3

is stated to demonstrate Defendants' discrimination against Plaintiff on the basis of his rotator cuff disability. Specifically, Plaintiff states that despite his shoulder injury he was asked to lift a 180 pound man out of a wheelchair. Plaintiff states that when he rightfully refused to comply with this direction, he was issued a warning and threatened with termination by both Garrett and Wilsey.

In addition to the aforementioned incidents that are alleged to involve direct acts of discrimination, the complaint also refers to complaints made by Plaintiff to Peconic management regarding wrongful conduct that he claims to have witnessed at the facility. Specifically, Plaintiff states that in December of 2010, he told Peconic's management about his concern as to "a growing drug problem among fellow nurses and nurse's assistants." At or about the same time, Plaintiff told Peconic's management about jewelry and credit card thefts taking place at the facility. He states further that he also complained about "unreported narcotic errors within the nurses notes." Such errors are alleged to have been deliberately "covered up by Lockbridge."

Plaintiff alleges that he was retaliated against for making the above-referenced complaints in February of 2011, when he was verbally reprimanded by Cole for failing to properly treat a patient. He states further that he was also retaliated against in March of 2011, when he was summoned to a disciplinary meeting held by Garrett, Lockbridge and Wilsey. Plaintiff states that at that meeting he was confronted with "fabricated accusations," and ordered to participate in an Employee Assistance Program entailing "mental therapy." In his final reference to action taken in retaliation for his complaints, Plaintiff alleges that he was terminated in retaliation for making "reports of drug use and thefts at Peconic."

4

II.     Causes of Action

        While Plaintiff's complaint does not set forth separately numbered causes of action, the

complaint alleges claims seeking damages for disability discrimination pursuant to the

Americans With Disabilities Act, 42 U.S.C. §12101, (the "ADA") and Section 290 of New York

State Executive Law (the "Human Rights Law").  Plaintiff also seeks damages pursuant to

Section 740 of the New York State Labor Law ("Section 740").  Section 740 is New York State's

"whistle blower statute."  It prohibits retaliation against employees who, inter alia, disclose to

supervisors any activity that is in violation of law, which violation "creates and presents a

substantial and specific danger to the public health or safety."  N.Y. Labor L. §740(2)(a).

III.    The Motion to Dismiss

        Defendants move to dismiss the complaint in its entirety.  First, it is argued that the

Section 740 claim must be dismissed because Plaintiff fails to allege: (1) the specific law, rule or

regulation violated by Peconic, and (2) how any such violation presented a danger to the public

health or safety. It is further argued that, whether the Section 740 claim is dismissed or not, the

statute's waiver provision requires dismissal of Plaintiff's state and federal disability

discrimination claims.  See N.Y. Labor L. §740(7).  After setting forth relevant legal principles,

the court will turn to the merits of the motion.

DISCUSSION

I.      Legal Principles

        A.      Standards on Motions to Dismiss

        In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept

the factual allegations in the complaints as true, and draw all reasonable inferences in favor of

5

plaintiffs.  Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46.  The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959.  Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

B.      Section 740

As noted, Section 740 is a "whistle blower statute." It prohibits an employer from taking retaliatory employment action against an employee who, inter alia, discloses to a supervisor any activity that is in violation of law, which violation "creates and presents a substantial and specific danger to the public health or safety."  N.Y. Labor L. §740(2)(a).  As the plain language of the statute makes clear, a Section 740 claim is stated only if plaintiff can show both: (1) disclosure of unlawful activity, and (2) that such activity presents a danger to the public health or safety.

Section 740 states clearly that it shall not be deemed to diminish the rights of any employee under "any other law or regulation or under any collective bargaining agreement or employment contract." N.Y. Labor L. §740(7).  After stating the intent "not to diminish" other

6

rights, the statute sets forth broad language of waiver. Specifically, the statute states that the institution of any action under Section 740 "shall be deemed a waiver" of any rights and remedies otherwise available pursuant to any such "contract, collective bargaining agreement, law, rule or regulation or under the common law." N.Y. Labor L. §740(7). New York's Court of Appeals has stated the waiver of any such action cannot be cured by withdrawal of a Section 740 claim in favor of pursuit of a claim based upon a different theory. Instead, it is the institution of a Section 740 action that triggers the statute's waiver. See Reddington v. Staten Island University Hospital, 862 N.Y.S.2d 842, 847 (2008). While it is thus clear that the institution of a Section 740 claim triggers the waiver provision, the scope of the statutory waiver is less clear. As discussed below, the proper scope of the waiver has been the subject of a variety of views.

II.     Disposition of the Motion

      A.     Order of Consideration

      While Defendants' memorandum of law argues first that the allegations in Plaintiff's complaint fail to state a claim pursuant to Section 740, the court here addresses first the issue of waiver. That is because if, indeed, Plaintiff's commencement of a Section 740 claim here waives other claims – including the sole federal claim that is the basis for federal jurisdiction – this court will not necessarily address the merits of the Section 740 claim. Instead, the court will consider whether to retain jurisdiction over Plaintiff's claim. In the event that jurisdiction is not retained, and Plaintiff pursues the matter in state court, the viability of Plaintiff's state law whistleblower claim is a matter that may be decided in a state forum. On the other hand, a decision against waiver will necessitate consideration of whether Plaintiff states a claim under Section 740. The court therefore turns to consider first the issue of waiver.

B.    Waiver

As noted, the issue of the scope of the Section 740 waiver has been the subject of disparate decisions, and has not been definitively decided by either the Second Circuit or the New York Court of Appeals. Some courts, applying a strict interpretation of the strong and plain language of waiver, have held that any claims that arise out of the course of conduct forming the basis of the Section 740 claim are barred by statute's broad waiver. See, e.g., Feinman v. Morgan Stanley Dean Witter, 193 Misc.2d 496, 497, 752 N.Y.S.2d 229 (N.Y. County 2002); Rotwein v. Sunharbor Manor Residential Health Care Facility, 181 Misc.2d 847, 853, 695 N.Y.S.2d 477 (N.Y. County 1999).

Other courts, that, in this court's view, have taken a more thoughtful approach, have fashioned and applied a narrower approach to the Section 740 waiver. Leading those courts is the decision of the Southern District of New York in Collette v. St. Luke's Roosevelt Hosp., 132 F. Supp.2d 256 (S.D.N.Y.2001). There, the court noted the contradictory nature of the two clauses of Section 740's waiver provision. Thus, as noted in Collette, while the first clause purports to preserve a whistle-blowing employee's rights under other laws, regulations, agreements or contracts, the second clause provides for the waiver of all such rights. N.Y. Labor L. §740(7).

Noting the somewhat absurd result that a strict plain language approach would require, the court in Collette engaged in a detailed analysis aimed at harmonizing the policy underlying the statute with its waiver, while also avoiding Constitutional concerns raised by allowing a state statute to waive rights granted under Federal law. See generally Collette, 132 F. Supp.2d at 262-74. The result of this analysis led the Collette court first to reject the "course of conduct" analysis

8

of the waiver as far too broad. As an example of the absurd result that such a construction would work, the court hypothesized a case of a whistleblowing employee being subject to a physical assault by the employer upon learning of the whistleblower's activity. The court noted that application of a "course of conduct" approach would require a waiver of the employee's battery claim – a claim aimed at protecting the employee's physical safety – at the expense of the Section 740 claim – a claim aimed at protecting the public safety. Collette, 132 F. Supp.2d at 265.

Rejecting this broad construction, the Collette court adopted a sensible approach to the waiver, holding that it waives only "other legal rights and remedies that protect against the same wrong that the statute itself prohibits." Collette, 132 F. Supp.2d at 267 (emphasis added). The Collette approach has been adopted by other federal courts. See Slay v. Target Corp., 2011 WL 3278918 *3 (S.D.N.Y. 2011); Kramsky v. Chetrit Group, LLC, 2010 WL 4628299 * (S.D.N.Y. 2010); Reddington v. Staten Island University Hosp., 373 F. Supp.2d 177, 185-86 (E.D.N.Y. 2005). This court joins those courts in adopting the Collette analysis, and turns therefore to consider whether, applying the narrow definition of waiver, any of Plaintiff's claims here are waived.

The complaint here alleges a whistleblower claim pursuant to Section 740, as well as New York State and Federal discrimination claims on account of Plaintiff's alleged disabilities. As this court has adopted the Collette court's approach, the issue is whether Plaintiff's disability discrimination claims protect against the same wrongs that Section 740 prohibits. The court holds that they do not. Specifically, the Human Rights Law seeks to "encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the

9

economic, cultural and intellectual life of the state; to encourage and promote the development

and execution by all persons within the state of such state programs," and to "eliminate and

prevent discrimination" in a variety of activities, including employment. N.Y. Exec. Law §290.

Similarly, the ADA is "designed to combat discrimination against persons with disabilities in

every area of public life." 42 U.S.C. § 12101. The whistleblower statute, on the other hand, is

aimed at protecting the rights of employees who report violations of law that present a danger to

public health or safety.  Because the anti-discrimination statutes seek to protect against wrongs

completely separate from those sought to be protected by Section 740, there is no waiver of any

such claims. Accord Collette, 132 F. Supp. 2d. at 274 (discriminatory conduct is a wrong that is

distinguishable from the rights and remedies that relate to whistleblowing); Slay, 2011 WL

3278918 at *4 (same).  Having held that Plaintiff's initiation of a Section 740 claim does not

waive his other claims, the court turns to consider the second issue raised in this motion, i.e.,

whether Plaintiff's states a claim under Section 740.

     C.    Failure to State a Claim

To maintain an action under Section 740, an employee must "plead and prove that the

employer engaged in an activity, policy, or practice that constituted an actual violation of law,

rule, or regulation."  Khan v. State Univ. of New York Health Science Ctr. At Brooklyn, 288

A.D.2d 350, 350 (2d Dept. 2001).  The New York Court of Appeals has applied a strict

construction to this language. Thus, an employee can prevail on a Section 740 claim only if he

can prove an actual violation of law – a "reasonable belief" of a possible violation will not

suffice. Bordell v General Elec. Co., 88 N.Y.2d 869, 644 N.Y.S.2d 912 (1996); see e.g., Tomo v.

Episcopal Health Services, Inc., 925 N.Y.S.2d 563, 565 (2d Dep't. 2011).

When adopting a strict construction of the statute, the Court of Appeals contrasted the language of Section 740 to that of Section 75-b of the Civil Service Law, a whistleblower statute that protects the rights of public employees. While the latter statute was amended to protect public employees' disclosure of information "which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action," no such amendment was ever made to Section 740. Id. at 871. Thus, Section 740, unlike Section 75-b, protects only an employee who has reported an actual violation of law. Bordell, 88 N.Y.2d at 871. Applying this standard in Bordell, the Court of Appeals held that Plaintiff's Section 740 claim was properly dismissed where he conceded that the conduct he complained about was not in violation of any law. Bordell 88 N.Y.2d at 871; see also Khan v. State University of New York Health Science Center At Brooklyn, 734 N.Y.S.2d 92, 94 (2d Dep't 2001) (summary judgment granted to Defendant where Plaintiff could not come forward with evidence that allegations as to poor air quality violated Federal standards).

New York courts have also stringently construed the requirement that a plaintiff seeking to state a Section 740 claim properly plead that the employer's conduct presented a "a substantial and specific danger to the public health and safety." N.Y. Labor L. §740(2)(a). Thus, the statute has been construed as requiring a "certain quantum of dangerous activity before its remedies are implicated." Peace v. KRNH, Inc., 785 N.Y.S.2d 547, 549 (3d Dep't. 2004).

The failure to plead the requisite dangerous conduct led to dismissal of a Section 740 complaint in Tomo v. Episcopal Health Services, Inc., 925 N.Y.S.2d 563 (2d Dep't 2011). There, plaintiff complained of two separate employer actions. The first was never implemented, and therefore could not form the basis of a claim that the conduct amounted to a violation of law.

11

The second employer conduct complained of was the allegation that the defendant health care provider failed to properly secure patient records. As to that conduct, the court held that such action, even if proven, did not amount to a "threat to public health and safety," and therefore could not sustain a claim pursuant to Section 740. Tomo, 925 N.Y.S.2d at 566; see also Frank v. Walgreens Co., 2011 WL 4465210 *6 (E.D.N.Y. 2011) (allegation that a child's presence in pharmacy area of defendant store could distract pharmacist and thereby endanger the public failed to properly allege danger to health and safety as required by Section 740); Tucker v. New York City, 2007 WL 3051870 *4 (S.D.N.Y. 2007) ("claims alleging fraudulent economic practices do not constitute a danger to public health or safety"); Lamagna v. New York State Ass'n for Help of Retarded Children, Inc., 551 N.Y.S.2d 556, 556 (2d Dep't 1990) (fiscal improprieties do not "portend 'a substantial and specific danger to the public health or safety' and thus, do not fall within the ambit of" Section 740) (citation omitted).

Section 740 claims dismissed by New York State Courts also include those raising allegations of misconduct similar to those raised here. In Gardner v Continuing Dev. Servs.,739 N.Y.S.2d 302 (2d Dep't. 2002), the Appellate Division of New York's Second Department held that it was proper to dismiss a Section 740 claim where Plaintiff alleged retaliation after she exposed the "neglect and abuse of developmentally disabled residents by other staff members" at the defendant health care facility. Gardner, 739 N.Y.S.2d at 302. Such violations of law, even if true, were held not to create the statutory "substantial and specific danger to the public health and safety." Id. Likewise in Green v Saratoga A.R.C., 650 N.Y.S.2d 441 (3d Dep't. 1996), Plaintiff alleged retaliation following her disclosure of illegal drug use by two co-workers. The charges of drug use were ultimately not substantiated and, in any event, the court noted that plaintiff alleged

12

only misconduct that "may have posed a danger to certain individual residents of the facility" but did not show that such conduct posed a danger to the public. Id. at 441; see also Kern v DePaul Mental Health Servs., 544 N.Y.S.2d 252 (4th Dep't 1989) (allegation of particular patient neglect posed danger to individual patient, but did not "threaten the health or safety of the public at large").

In Villarin v. Rabbi Haskel Lookstein School, 942 N.Y.S.2d 67 (1st Dep't. 2012), on the other hand, the court denied a motion to dismiss a claim pursuant to Section 740. There, the plaintiff was a school nurse who alleged that she was terminated after reporting an instance of suspected child abuse. Holding that a policy of failing to report child abuse satisfied the requirement of pleading a threat to public health or safety, the court affirmed the trial court's denial of a motion to dismiss. Id. at 70.

Here, the sufficiency of Plaintiff's claim is raised in the context of a motion to dismiss. Thus, the pleading, considered without reference to outside evidence, is required to state only a claim that is "plausible on its face." Twombly, 550 U.S. at 570. Upon review of the allegations in the complaint, the court holds that such a claim is stated. Plaintiff's allegations regarding drug use and theft by Peconic's staff are sufficient, at this stage of the proceedings, to state a claim that Plaintiff reported conduct that was in actual violation of law, which presented a substantial threat to public health or safety. Plaintiff's claims may not be borne out by facts revealed after discovery. Indeed, it may be revealed that no violation of law ever occurred. At this stage of the litigation, however, the court declines to dismiss the complaint for failure to state a claim and will allow discovery to continue. Accord Berde v. North Shore-Long Island Jewish Health System, Inc., 855 N.Y.S.2d 656, 657-78 (2d Dep't 2008) (issues of fact preclude dismissal of

13

Section 740 claim).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied. The parties are to continue with discovery. The Clerk of the Court is directed to terminate the motion appearing at docket entry number 14.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
　　　　July 30 , 2012

14